## DOBSON *v.* RACEY.

An agent, entrusted with the sale of real estate, cannot directly or indirectly, be-come the purchaser thereof, under the power conferred upon him.

D. owning a parcel of land which was mortgaged to R. for its value, executed a power of attorney to R. authorizing him to sell the land, and after retaining the amount due on the mortgage, to pay the surplus to D.'s wife. R. soon after, con-veyed the land under the power, to H. without consideration, and H. immediate-ly reconveyed it to R. The wife of D. joined in the deed to H., for which she re-

ceived $100, from R.   On a bill filed by the heir of D., it was *held* that the sale could not be maintained, and that the heir was entitled to redeem the land from R.

September 5 ;  October 3, 1845.

IN July, 1817, James Dobson, being seised of a tract of land on Staten Island, mortgaged it to Charles Racey, to secure the payment of $1500, with interest.   In October following, Dobson being about to leave the state, executed to Racey, with whom he was upon friendly terms, and who was a creditor exclusive of the mortgage debt, a power of attorney authorizing him to sell and convey the mortgaged premises in fee, in such manner as he might deem proper; and out of the proceeds of the sale after discharging the mortgage debt, to pay over the surplus to the wife of Dobson.

Dobson departed, and died abroad ;  at what time, is unknown. On the 19th of November, 1817, Racey by virtue of the power of attorney, conveyed the mortgaged premises to Thomas Harrison in fee.   Mrs. Dobson, who had executed the mortgage in due form, united in the conveyance to Harrison, releasing her right of dower in the equity of redemption ;  and thereupon Racey paid to her $100.   The value of the premises was about equal to the amount of the mortgage.   No consideration was paid or agreed to be paid by Harrison, and two days after receiving the deed, he conveyed the premises to Racey in fee.   Racey entered into the possession, and continued therein until his death, when the defendant his widow and administratrix took the possession, and has retained it ever since.   No proceedings were ever had to foreclose the mortgage executed by Dobson.

The complainant is the only child and heir of Dobson, and was born soon after he departed from the state.   On the 31st of January, 1844, she filed the bill in this cause, claiming that the sale to Harrison was inoperative and void, and that she was entitled to redeem the mortgaged premises ;  and she prayed an account of the rents and profits, and a redemption accordingly. The answer stated that the sale and conveyance to Harrison were made to pay Dobson's debt to Racey, and to vest the title of the mortgaged premises in the latter, without the expense of a

Dobson v. Racey.

foreclosure ; and it insisted on the perfect good faith of the trans-
action.

*S. A. Crapo*, and *T. W. Tucker*, for the complainant.

*E. Ward*, and *W. W. Campbell*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The validity of pur-
chases made by fiduciaries, of the property entrusted to them, has
been much considered recently in the courts of equity, both in
this state and in England. And it is now a settled rule both
there and here, that no party can be permitted to purchase an in-
terest, where he has a duty to perform which is inconsistent with
the character of purchaser. (*Greenlaw* v. *King*, 5 Lond. Jur.
Rep. 18, before Lord Cottenham; *De Caters* v. *Le Ray De
Chaumont*, 3 Paige, 178; *Van Eps* v. *Van Eps*, 9 ibid. 237;
*Torrey* v. *Bank of Orleans*, 9 ibid. 649; *Hawley* v. *Cramer*, 4
Cowen, 717; *Rogers* v. *Rogers*, Hopk. R. 515; *Hamilton* v.
*Wright*, 9 Clark & Fin. 111; *Cram* v. *Mitchell*, 3 N. Y.
Legal Obs. 163; and *Dickinson* v. *Codwise*, Jan. 24, 1844,
before the Assistant Vice-Chancellor.)(a)

In this instance, whether Charles Racey is to be regarded as a
trustee, or as an agent, the rule was applicable to him. His in-
terest as a purchaser was in direct conflict with the interest of
Dobson, his constituent or *cestui que trust*. His purchase caused
one of those collisions between interest and duty, which equity
has wisely and resolutely prohibited.

It is said that there was no fraud committed or advantage
taken by Racey. This makes no difference in the application of
the principle. The very position of the agent or trustee, however,
gives him an undue advantage as a buyer; and when he avails

---

(a) These cases are reported in 1 Sand. Ch. R. 214, 251. And see *Charter* v.
*Trevelyan*, (11 Clark & Fin. 714, S. C. 4 Law Journal, N. S. Chancery, 209,) be-
fore the Master of the Rolls; where after thirty-seven years, a purchase by an agent
of the lands which he was authorized to sell, was set aside as fraudulent; the facts
having remained unknown to the principal, and the sale having been made at a great
under-value in price.

himself of such an advantage, he is guilty of a constructive fraud.

The transaction in question is certainly not free from suspicion of wrong. The conveyence to Harrison was executed within six weeks after the power was conferred upon Racey, and after the constituent had left the country. If such a speedy execution of the power had been in contemplation, the parties would naturally have sold the property and completed the sale before Dobson's departure. But I need not dwell upon this aspect of the case.

Again, it is urged that no injury ensued to Dobson or any one else. This also, if true does not alter the case. The law declares the sale unwarrantable on grounds of public policy, irrespective of any proof of injury or intentional wrong. In *Greenlaw* v. *King*, both the Master of the Rolls and the Chancellor fully exonerated the party from every charge of bad faith or wrongful intention; yet they rigidly enforced the principle which I have stated.

Nor is it an admissible ground for making an exception to the rule, that the trustee paid the fair value of the property. If a trustee desire to become the purchaser in good faith, his simple course is to resign his trust, and appear as a bidder or purchaser.

It may be true, as was urged, that a foreclosure of Racey's mortgage, or a sale to a *bona fide* purchaser, would have left no surplus for Dobson. Either of those modes was open for Racey to pursue, but he adopted neither; so that it is useless to speculate on what might have ensued from them.

Another ground of defence is, that Mrs. Dobson joined in the sale, and received $100, from Racey. This sum being paid to her as the consideration, may be regarded as given for her inchoate right of dower. Whether it was paid to her for that cause, or as a surplus, it cannot confirm a sale which was irregular as against Dobson. She was not clothed with any authority in respect of his estate in the land, and her assent to the conveyance to Harrison is of no avail against Dobson. He conferred on her one-half of the surplus, but she had nothing to do with its creation, under the instrument which he executed to Racey.

The complainant as the heir of Dobson is entitled to redeem

the lands in question. There is however a defect of parties which precludes the entry of a decree to that effect in this stage of the cause. The heirs or devisees of Racey, are necessary parties to the suit, and it must stand over in order that they may be brought before the court. If Mrs. Racey succeeded to all the title of her husband, the bill may be amended. Otherwise there will have to be a supplemental bill.

Decree accordingly.